UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
2008 JUL 14 AM 10: 32
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

'08 MJ 2126

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Magistrate's Case No. _____ |
| ) | |
| V.S. ) | COMPLAINT FOR VIOLATION OF: |
| ) | |
| Rhett Butler BILLINGSLEY ) | 21 U.S.C. 952 and 960-Importation of a Controlled Substance. |

The complainant being duly sworn states:

### COUNT ONE

That on or about July 13, 2008, within the Southern District of California, defendant Rhett Butler BILLINGSLEY did knowingly and intentionally import approximately 46.25 kilograms of marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952 and 960.

And the complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

_Glenn MacDonald_ /s/
Special Agent
Immigration and Customs Enforcement

Sworn to before me and subscribed in my presence, __July 14__, 2008.

_____
United States Magistrate Judge
Southern District of California

CATHY ANN BENCIVENGO
U.S. MAGISTRATE JUDGE

## PROBABLE CAUSE STATEMENT

I, Special Agent Glenn MacDonald, declare under penalty of perjury, the following is true and correct:

On July 13, 2008, at approximately 0543 hours, while conducting pre-primary roving operations, Customs and Border Protection (CBP) Canine Enforcement Officer (CEO) Stuart Hershey's Narcotics Detection Dog "DADA" alerted to the fuel tank of a white 1993 Chevrolet Suburban bearing California license plates 5VWK364. United States citizen Rhett Butler BILLINGSLEY, the driver and sole occupant, told CEO Hershey that he was on his way to work. BILLINGSLEY further stated that he had been in Mexico for about a day and a half, and that that he had nothing to declare. CEO Hershey inspected the fuel tank which appeared to have been recently removed. CEO Hershey also noticed that the gas tank sounded solid when he tapped it with his flashlight. CEO Hershey informed CBP Officer Duke, who responded to assist, of his observations.

On July 13, 2008, at approximately 0550 hours, while conducting pre-primary roving operations, CBP Officer Duke responded to a radio call for assistance from CEO Hershey. CEO Hershey informed Officer Duke of the canine alert. Officer Duke obtained two negative declarations from BILLINGSLEY. BILLINGSLEY claimed to have owned the vehicle for one week. When asked if any maintenance had been done on the vehicle, BILLINGSLEY

stated he personally did a tune up and that he had no other problems with the vehicle, except for the fact that it had not been smog tested yet. Officer Duke asked BILLINGSLEY if anyone had access to the vehicle, to which BILLINGSLEY stated "No, only myself". Officer Duke asked BILLINGSLEY if everything in the vehicle belong to him, to which BILLINGSLEY replied "Yes, everything in the vehicle is mine". When asked to where he was going, BILLINGSLEY stated he was going to work as a "rigger" at the Hyatt Hotel in San Diego. Officer Duke removed BILLINGSLEY from the vehicle, placed him in handcuffs and escorted him to the security office. Officer Duke then conducted a NII inspection and bore scoped the fuel tank of the 1993 Chevrolet, which revealed space anomalies (tank within a tank) in the fuel tank area. Officer Duke advised the office supervisor of his findings and recommended that the tank be removed for further inspection.

On July 13, 2008, at approximately 0553 hours, while CBP Officer Jose De Leon was conducting a personal search of BILLINGSLEY, BILLINGSLEY declared a small bag of marijuana in his left sock. Officer De Leon placed the small bag of marijuana in an evidence bag in the San Ysidro POE security office.

On July 13, 2008, at approximately 0755 hours, a subsequent search of the 1993 Chevrolet resulted in the discovery of two metal containers within the gas tank, which contained a total weight of approximately 46.25 kilograms (101.75 pounds) of marijuana. The bulk marijuana, samples, vehicle, three cell phones two notebooks and various documents were seized on CF-6051 2008250490010501 001 through 007.

On July 13, 2008, at approximately 1005 hours, SA MacDonald was informed by CBP Officer Anthony Abts that BILLINGSLEY urgently wanted to speak with an agent regarding his fiancée, who BILLINGSLEY claimed was being held against her will. SA MacDonald contacted BILLINGSLEY and asked if he wanted to speak with SA MacDonald, to which BILLINGSLEY replied yes. SA MacDonald informed BILLINGSLEY he would return with a Miranda Rights Form. Post Miranda, BILLINGSLEY stated that several individuals were holding his fiancée against her will,

forcing BILLINGSLEY to cross his vehicle into the United States under their direction. SA MacDonald spoke to BILLINGSLEY several other times in order to obtain additional information that might assist in the investigation of the alleged kidnapping. Each time SA MacDonald spoke with BILLINGSLEY, SA MacDonald reminded BILLINGSLEY of his Miranda Rights. During the second interaction with BILLINGSLEY, after originally advising him of his rights, SA MacDonald asked what the individuals told BILLINGSLEY would happen to his fiancée if BILLINGSLEY did not successfully cross the vehicle. BILLINGSLEY said they told him that "he would never see her again" which BILLINGSLEY took to mean they would kill her.

On July 13, 2008, at approximately 1520 hours, SA MacDonald re-read BILLINGSLEY his Miranda Rights, which BILLINGSLEY waived freely and voluntarily. SA MacDonald and ICE SA Scott Lensky then conducted a video-recorded interview of BILLINGSLEY. During the course of the interview BILLINGSLEY continued to claim he was being forced to cross the vehicle because individuals were holding his fiancée against her will. BILLINGSLEY did say however, that he was suppose to receive a $1,000 for the first time he crossed the vehicle, which he never received, and $1,500 for the attempted July 13, 2008 crossing. BILLINGSLEY said the first crossing took place on Wednesday, July 9, 2008 when he was instructed to drive to Perris, California and then to Pomona, California. In Perris, California, BILLINGSLEY dropped the vehicle off at a shopping center and waited 8 hours for the car to be returned. BILLINGSLEY said he was originally told it would only take an hour. BILLINGSLEY then drove to Pomona, California where he dropped off the vehicle at a barber shop, once the vehicle was returned; BILLINGSLEY drove it back to Tijuana, Mexico. At both locations, someone else took possession of the 1993 Chevrolet. BILLINGSLEY stated that he never asked what was in the vehicle but admitted that he thought the vehicle contained drugs although he was unsure of what kind. Information obtained during the investigation thus far, indicates that BILLINGSLEY supposed fiancé was not being held against her will.

BILLINGSLEY was arrested for violations of 21 USC 952 and 960, Importation of a Controlled Substance and booked into the Metropolitan Correctional Center, San Diego, California.

Executed on __July 14, 2008__, at __10:07 AM__ (time)

_____  Glen MacDonald
Special Agent, Immigration and Customs Enforcement

On the basis of the facts presented in this probable cause statement consisting of ____ pages, I find probable cause to believe that the defendant(s) named in this probable cause statement committed the offense on _____ in violation of Title _____, United States Code, Section(s)_____.

_____          7/14/08 @ 10:10 AM
United States Magistrate Judge            Date/Time